UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| VANESSA C., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 20-363MSM |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of Social Security, | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Vanessa C. is a high-school educated woman in her twenties[1] who cares for her two children and worked as a pharmacy technician, full-time until her date of alleged onset, July 17, 2018, and part-time until September 23, 2019. On August 23, 2018, she applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under 42 U.S.C. § 1383(c)(3). Plaintiff's applications alleged disability based on fibromyalgia, bipolar disorder 1, anxiety, depression, panic disorder, obsessive compulsive disorder, and binge eating disorder. On December 16, 2019, in reliance on what he found to be the persuasive opinions of a testifying medical expert and two non-examining state-agency expert psychologists, an administrative law judge ("ALJ") made the Step Two findings that fibromyalgia was not established as a medically determinable impairment and that Plaintiff's mental impairments caused only mild limitations. Proceeding further in the familiar sequential analysis, the ALJ relied on the medical expert to find that Plaintiff suffered from myalgia and headaches severe enough to limit her to sedentary work with a sit/stand option and with other environmental limitations. The ALJ's resulting residual

---

[1] Plaintiff turned thirty several months after her case was filed in this Court.

functional capacity ("RFC")[2] finding, converted into a hypothetical posed to a testifying vocational expert, led to the ALJ's conclusion that Plaintiff was not disabled at any relevant time. Following an unsuccessful request for Appeals Council review, the Commissioner of Social Security ("Commissioner") denied Plaintiff's applications.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner; she argues that both the ALJ's Step Two findings and RFC are tainted, requiring remand. ECF No. 14. Defendant Kilolo Kijakazi ("Defendant") argues that the ALJ properly applied the law to the substantial evidence of record and that any errors are harmless; he has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 16. The motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entirety of the record, I find that the ALJ's findings are consistent with applicable law and sufficiently supported by substantial evidence; the only error is harmless. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 16) be GRANTED.

I. **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v.

---

[2] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128-131 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).  If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is

very strong and there is no contrary evidence, the Court can remand for an award of benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

## II.     **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.[3]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     **The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at

---

[3] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set of these regulations.

Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

    **B.**    **Opinion Evidence**

For applications like this one, filed on or after March 27, 2017, the SSA has fundamentally changed how adjudicators assess opinion evidence. The familiar and longstanding requirements – that adjudicators must assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. 20 C.F.R. § 404.1520c(a). Instead, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources." Id. Rather, an ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or

finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  In other words, "[a] medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Id. at 5854.

      C.      **Evaluation of Claims of Mental Impairment**

The evaluation of a claim of disability based on mental illness requires use of a psychiatric review technique ("PRT") that assesses impairment in four work-related broad functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentration, persistence or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  The ALJ uses a five-point rating scale: none, mild, moderate, marked, and extreme.  20 C.F.R. §§ 404.1520a(c)(4).  If the impairment causes no or "mild" difficulties in these areas, the ALJ generally will find that it is not severe.  20 C.F.R. §§ 404.1520a(d)(1).  The review technique is used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process and, if found to be severe, also serves as the backdrop for the more detailed mental RFC assessment at Step Four.  See, e.g., Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013); SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ must incorporate pertinent findings and conclusions based on the PRT into his decision and must include a specific finding as to the degree of limitation in each of the four functional areas.  20 C.F.R. § 404.1520a(e)(4); Carolyn A. Kubitschek & Jon Dubin, Social Security Disability Law & Procedure in Federal Court § 5:38 (2021 ed.).

      D.      **Pain**

"Pain can constitute a significant non-exertional impairment."  Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999).  Congress has determined that a claimant will not be considered

disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017); 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis. Avery v. Sec'y of HHS, 797 F.2d 19, 28-29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limiting effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

### E. Credibility of Claimant's Subjective Statements

Where an ALJ decides not to fully credit a claimant's subjective statements, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309 (D. Mass. 1998); Stowe v. SSA, __ F. App'x ___, No. 20-14025, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See Sacilowski, 959 F.3d at 441; McMahon v. Comm'r SSA, 583 F. App'x 886, 893 (11th Cir.

2014); DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (per curiam)).  Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462.  It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings.  2017 WL 4790249, at *49464-65; see Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *5-6 (D.R.I. July 23, 2021).

### III.   Analysis

#### A.   The ALJ's Step Two Determinations

Plaintiff's first Step Two[4] attack is on the ALJ's finding that myalgia, not fibromyalgia, is the severe impairment that seriously limited Plaintiff's ability to function.  The finding rests on the dearth of medical evidence to support a diagnosis of fibromyalgia, as assessed by the testifying medical expert, Dr. Kaplan.  Plaintiff seems to contend that the Court itself should

---

[4] In passing, Plaintiff also contends that her obesity is severe, but she presents no argument to support the proposition that the ALJ's finding otherwise is tainted by error.  The Court cannot speculate what she intended; this contention is deemed to be waived.  Melissa G., 2021 WL 3124228, at *8 (arguments that are not developed or supported in opening brief as required by court's scheduling order "are clearly throw-in arguments left for the [c]ourt to sort out on its own and, as such, are deemed waived") (citing Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005)).

reexamine the record, weigh the symptoms that are observed and make the lay assessment that fibromyalgia is a supported diagnosis based on the appropriate diagnostic criteria.[5] This argument should be rejected.

Plaintiff is right that her medical record certainly reflects a history of fibromyalgia, e.g., Tr. 469, and it certainly is replete with Plaintiff's subjective reports, for example, that "her fibromyalgia is very active." E.g., Tr. 484.  However, during the period in issue, Plaintiff was never seen by a rheumatologist; further, no treating source ever made a current diagnosis of fibromyalgia.[6]  See Tr. 38 (Plaintiff testified she plans to see rheumatologist in the future about platelet issue).  Moreover, the handful of references to active treatment of fibromyalgia are limited to the earlier records (of Coppola Medical Associates and Memorial Hospital Family Care), which reflect ongoing treatment of fibromyalgia diagnosed at some unknown time by some unknown source in the past; importantly, at least one of these records relabels the problem as myalgia, Tr. 443, and these records also consistently reflect largely normal examinations, with tenderness only occasionally in limited areas of the body,[7] as well as that Plaintiff was consistently "independent in all ADL's." E.g., Tr. 442, 459, 484, 486-87, 496, 498.  Moreover, by the latter part of the period of alleged disability, Plaintiff's treating sources were referring to her operative diagnosis as myalgia, not fibromyalgia. E.g., Tr. 698, 706, 900.  As to a diagnosis

---

[5] The criteria are set out in Social Security Ruling 12-2p, 2012 WL 3104869 (July 25, 2012), entitled "Evaluation of Fibromyalgia."  This guidance issued in 2012 to assist adjudicators in recognition of the competing realities that fibromyalgia is an impairment that can truly be disabling, but also one whose subjective nature makes it vulnerable to faking or exaggeration.  See Tegan S. v. Saul, C.A. No. 20-307PAS, 2021 WL 2562426, at *2 n.6 (D.R.I. June 23, 2021)

[6] This case differs sharply from Tegan S., 2021 WL 2562426, in which an ALJ also rejected fibromyalgia at Step Two.  By contrast with Plaintiff, in Tegan S., the claimant presented longitudinal treating records from a rheumatologist and a primary care physician, both endorsing the diagnosis of fibromyalgia and both treating her with powerful pain medications, as well as a treating source opinion from the rheumatologist endorsing the fibromyalgia. Id. at *7.

[7] For example, Plaintiff exhibited tenderness in the shoulder and neck caused by an arm movement. Tr. 442-44.

by reference to symptoms, as Plaintiff now contends would be appropriate, that is exactly what the ALJ procured when he called Dr. Kaplan as a medical expert. Dr. Kaplan surveyed the record, including all symptoms and references to pain; focusing on her physical condition, he testified that Plaintiff's medically diagnosed impairment is myalgia, which he opined was causing significant limitations. Coupled with the medical evidence classifying her diagnosis as myalgia and the absence of an active diagnosis of fibromyalgia, Dr. Kaplan's opinion is more than sufficient to constitute substantial evidence supporting the ALJ's rejection of fibromyalgia as a medically determinable impairment at Step Two.

Plaintiff's second Step Two challenge is focused on the ALJ's treatment of her mental impairments. These arguments have more heft but ultimately are still deficient. For starters, Plaintiff is right that the ALJ's decision omits any reference to bipolar and panic disorder, which were diagnosed by the treating psychiatrist Dr. John McMillin on August 9, 2018. Tr. 610-11. While the decision includes a summary of the mental health treating records and reflects careful consideration of the related disorders of depression and anxiety, it fails to name bipolar and panic disorder as diagnosed impairments. Tr. 15-17, 21. To support her claim that this error is consequential and requires remand, Plaintiff argues that the Court should reweigh her mental health symptoms, as she subjectively described them to treating sources, and find that they are severe for Step Two purposes. Relatedly, Plaintiff presents a somewhat puzzling[8] attack on the ALJ's "mental . . . residual functional capacity" finding, arguing that the Court should examine unspecified notes made by Plaintiff's treating psychiatrist, Dr. John McMillin, which she

---

[8] The argument is puzzling because the ALJ did not make mental RFC findings; rather, he resolved Plaintiff's mental impairments at Step Two through detailed PRT findings of no or at most mild limitations in reliance on what he found to be the persuasive opinions of the state-agency psychologists and on the ALJ's own survey of the medical record.

contends will compel the finding that Plaintiff had limitations that the state-agency psychologists did not consider. Plaintiff also points vaguely to the reality that Plaintiff's mental health treatment continued after the state-agency file review; however, she does not argue that these post-file review treating records reflect a worsening of her mental status.

The ALJ's omission of any reference to the diagnosed impairments of bipolar disorder and panic disorder is unquestionably an error. However, the "mere diagnosis of a condition says nothing about the severity of the condition." Keach v. Berryhill, Civil Action No. 17-cv-10133-ADB, 2018 WL 1440316, at *12 (D. Mass. Mar. 22, 2018) (cleaned up). As long as the impact of the symptoms caused by the omitted diagnoses on the claimant's ability to function has been appropriately considered, such an error is harmless. White v. Colvin, No. CA-14-171 S, 2015 WL 5012614, at *9 (D.R.I. Aug. 21, 2015).

In this case, the ALJ surveyed all of the medical evidence and carefully considered the severity of Plaintiff's mental symptoms. As his decision accurately summarizes, Tr. 15-17, 21, throughout the relevant period, Plaintiff's healthcare providers regularly observed that Plaintiff had normal mood or behavior; indeed, with the exception of an occasional observation of depression and anxiety and congruent affect, Plaintiff's mental status examinations are almost entirely normal. The ALJ specifically and correctly noted that Plaintiff's condition improved during the post-file review period. Tr. 15. Most significant and dispositive of this issue is the ALJ's reliance for his PRT finding that Plaintiff's mental symptoms were "mild" or caused "no limitation[s]" on the opinions of the state-agency psychologists. These psychologists did not overlook bipolar and panic disorders. See Tr. 64-66, 87-93. To the contrary, the file that they reviewed included months of treating notes from Plaintiff's treating psychiatrist (Dr. McMillin) and her counselor; their administrative findings repeatedly reference both diagnoses. Tr. 65-67,

11

88-94. Confirming that both were considered, the Listings that these experts expressly evaluated include Listing 12.04, which covers both depressive disorder <u>and</u> bipolar disorder, and Listing 12.06, which covers both anxiety disorder <u>and</u> panic disorder (among others). At bottom, it is their expert analysis of the clinical significance of what appears in the medical record that is the foundation of the ALJ's Step Two finding that Plaintiff's mental impairments were not severe. As long as the administrative findings of these expert psychologists provide substantial evidence to support the ALJ's assessment of Plaintiff's mental functioning, his decision must be affirmed. <u>Rodriguez Pagan</u>, 819 F.2d at 3.

      To overcome this proposition, Plaintiff attempts to attack the state-agency opinions by pointing out that she continued to have mental health treatment post-file review. This argument falls flat because it ignores the well-settled proposition that, when (as happened here) an ALJ reviews the post-file review evidence and makes the common-sense observation that the pre- and post-review records are similar, he may rely on state-agency opinions that analyze solely the earlier material. <u>Andrea T. v. Saul</u>, C.A. No. 19-505WES, 2020 WL 2115898, at *6 (D.R.I. May 4, 2020). That is, a state-agency opinion is not irrelevant merely because the expert was not privy to updated medical records; to hold otherwise "would defy logic and be a formula for paralysis." <u>Sanford v. Astrue</u>, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009). Rather, only if there are post-review indications of worsening that require medical interpretation does an adjudicator's reliance on the reviewer's opinions require remand. <u>Alcantara v. Astrue</u>, 257 F. App'x 333, 334 (1st Cir. 2007) (per curiam). Plaintiff has pointed to nothing in this record that amounts to post-file review evidence supporting "a significant worsening of the claimant's condition" or suggesting any greater limitations then what the expert state-agency psychologists found. <u>Virgen C. v. Berryhill</u>, C.A. No. 16-480 WES, 2018 WL

4693954, at *3 (D.R.I. Sept. 30, 2018); see Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL 6242655, at *8 (D.R.I. Nov. 22, 2019) (when post-file review record are either consistent with or more benign that those seen by state agency expert, expert's opinion may be relied on as substantial evidence); Preston v. Colvin, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at *2 (D. Me. Oct. 21, 2014) ("When the medical evidence postdating state-agency reviewers' reports is essentially cumulative, an administrative law judge's reliance on those reports is not error."). As the ALJ summarized in his decision (and confirmed by the Commissioner in a detailed and helpful chart in his brief), Plaintiff's post-file review mental health treating examinations are even more benign that those that preceded them.[9]

In sum, the ALJ's omission from his decision of bipolar and panic disorder is harmless because the state-agency psychologists did not overlook those diagnoses in formulating their PRT opinions. Nor is there error in the ALJ's reliance on those state-agency opinions; they constitute substantial evidence in light of the absence of evidence of worsening after the psychologists' file review was complete. When an ALJ's Step Two findings are formulated in reliance on the opinions of non-examining state-agency experts, who gave due consideration to limitations caused by the claimant's mental disorders, the ALJ's erroneous failure to mention those disorders at Step Two is harmless. White, 2015 WL 5012614, at *9. As in White, the ALJ's Step Two findings regarding Plaintiff's mental impairments should be affirmed.

---

[9] The last mental status examination of record is illustrative: based on an examination performed on October 2, 2019, at Lifespan, it reflects entirely normal psychiatric findings, including normal mood, normal affect, normal speech, normal behavior, normal judgment, normal thought content, normal cognition and normal memory. Tr. 974.

### B. The ALJ's RFC Finding

Plaintiff's only supported attack[10] on the ALJ's RFC finding is that it omitted any limitation based on the testimony of the medical expert, Dr. Kaplan, that "it would not be unreasonable for her to ask for increased breaks."[11]  Tr. 52.  This argument is fatally flawed.  Dr. Kaplan's response is not a revision of his opinion as to Plaintiff's RFC.  He simply noted that it would be reasonable for Plaintiff to ask for increased breaks.  He did not opine that Plaintiff could not function without them.  Plaintiff's attorney could have continued to question Dr. Kaplan further if clarification seemed necessary.  He did not do so, leaving the record as it stands – with the testimony of a well-qualified medical professional who formulated an RFC opinion that does not call for extra breaks, on which the ALJ relied.  The issue now before the Court is whether this amounts to substantial evidence supporting the lack of such a limitation.  Bennett v. Berryhill, 256 F. Supp. 3d 93, 97 (D. Mass. June 20, 2017) ("[A]s the Commissioner's determinations are 'supported by substantial evidence,' they must be affirmed, 'even if the record . . . could justify a different conclusion.'") (quoting Rodriguez Pagan, 819 F.2d at 3).  It does.  The ALJ's RFC conclusion should be affirmed.

### C. ALJ's Credibility Determination

Although Plaintiff does not make a frontal assault on the ALJ's decision to discount her subjective statements, she does argue that the ALJ's decision is tainted by error because the ALJ

---

[10] Plaintiff also argues in passing that her "pain levels and side effects of medication should also have been considered." ECF No. 14 at 12.  She does not explain this argument.  It appears contradicted by the ALJ's reliance on Dr. Kaplan's opinion whose testimony was based on his review of the record so as to permit him to testify regarding Plaintiff's physical diagnoses and their limiting effects; Dr. Kaplan's testimony confirms that he specifically took Plaintiff's symptoms and allegations of pain into consideration.  Tr. 49-52.  This contention is undeveloped and is therefore deemed waived.  See Melissa G., 2021 WL 3124228, at *8.

[11] Notably, Plaintiff's testimony established that she asked for and received additional breaks while working part-time shifts as a pharmacy technician.  Tr. 44.
14

noted that she retained the ability to engage in various activities of daily living. Citing <u>Garrison v. Colvin</u>, 759 F.3d 995, 1016 (9th Cir. 2014), Plaintiff contends that the ALJ failed to recognize that the ability to perform activities of daily living does not equate to the ability to work on a consistent basis.

This argument fails because it misstates what the ALJ actually did. Far from finding that the ability to perform daily activities translates into the ability to work, the ALJ found that "the claimant's activities of daily living and functioning belie the severity of the symptoms alleged." Tr. 19. So viewed – that is, as a critique of the ALJ's reliance on Plaintiff's activities as part of the foundation for the finding that her subjective statements about the severity of her symptoms must be discounted – the argument still fails because substantial evidence supports every facet of the ALJ's credibility finding. <u>Montrose v. Berryhill</u>, Case No. 17-cv-148-SM, 2017 WL 6767238, at *7 (D.N.H. Dec. 14, 2017), <u>adopted</u>, 2018 WL 262828 (D.N.H. Jan. 2, 2018) (credibility determination will be affirmed if supported by substantial evidence); <u>see</u> <u>Sacilowski</u>, 959 F.3d at 441 (ALJ may discount claimant's allegations based on record evidence that directly rebuts her testimony).

Plaintiff's subjective claim is based on her decision to stop working full-time at her onset date on July 17, 2018, because she believed that her mental and physical health seemed to be getting worse. Tr. 39. After that, she alleges that she was able to continue to work part-time, one day a week for a long (typically more than nine hours)[12] shift with the accommodation of a stool for sitting, and additional unscheduled breaks. Tr. 43-44, 627. According to her testimony, that one day of work left her bed-ridden for most, if not all, of the ensuing week. Tr. 45. She

---

[12] Plaintiff's testimony that she worked eight hours per shift, Tr. 39, is contradicted by the records from her employer which show that she usually worked more than nine hours per shift. Tr. 220-66.

15

also claimed to have difficulty with virtually all movements, including standing, walking, sitting, lifting, squatting, bending and climbing stairs.  See Tr. 19.

The ALJ appropriately contrasted these allegations with Plaintiff's daily activities, finding that her subjective statements clash, for example, with her ability to work one day a week[13]; with her ability to attend to personal needs, shop and to clean, do laundry and bake; with her ability to use public transportation; with her five-hour weekend trip involving ten hours of driving (in March 2019); and with her pursuit of "hobbies and interests," such as crossword puzzles, reading, sewing costumes for her daughter, and starting a YouTube channel.  See Tr. 16-22, 751, 867.  The record also reflects that she could play tennis (in May 2019), go on a family vacation to Orlando (in July 2019) and, according to her mother's Function Report, care for her children's daily needs.  Id. at 304, 881, 873.  In short, the ALJ properly contrasted Plaintiff's daily activities with her subjective statements about the severity of her symptoms to find that the latter are inconsistent with the former.  See Coskery v. Berryhill, 892 F.3d 1, 7 (1st Cir. 2018) ("[W]e conclude that substantial evidence supports the ALJ's determination that [claimant]'s ability to carry out certain daily activities undermines [her] contention that [she] is unable to perform light work.").

There is no error in the ALJ's reliance on Plaintiff's daily activities to reach this well-supported credibility finding.

---

[13] As the ALJ noted, Plaintiff stopped working at all on September 23, 2019, not because of her symptoms but because of "scheduling" so that she could follow up on a medical test result (elevated platelets).  Tr. 20 (referencing Tr. 36-37, 39).  Dr. Kaplan testified that this platelet reading was "outside the normal range without being part of any serious problem."  Tr. 51.  Plaintiff's decision to stop work is reflected in the medical record in that there is an out-of-work note from treating Nurse Practitioner Dana, who opined that she could return to work on October 28, 2019; a subsequent note extended the return-to-work date to November 25, 2019.  Tr. 977-78.  That is, this primary treating source did not opine or advise that Plaintiff was unable to work at all.

## IV.  Conclusion

In his decision, the ALJ made the well-supported credibility finding that Plaintiff's subjective statements about her symptoms and limitations clashed both with her activities and with the medical evidence, which reflects mostly intact physical examinations and largely normal mental status evaluations, including improvement with treatment.  For mental health findings, the ALJ properly relied on the state-agency psychologists and the absence of "any consistent impaired mental status examinations or history of psychiatric admissions," Tr. 17, both before and after the state-agency file review.  For physical findings, he based his rejection of fibromyalgia and his RFC finding on Dr. Kaplan's expert testimony, which in turn was based on his review of the record.  The ALJ did not reject any competent medical opinion because no medical professional opined to functional limitations beyond the significant limitations reflected in the ALJ's decision.  Plaintiff's argument to the contrary is largely a request that the Court engage in an improper reweighing of the evidence.  Barbosa v. Berryhill, C.A. No. 16-168 S, 2017 WL 1233833, at *7 (D.R.I. Feb. 15, 2017), adopted, 2017 WL 1233819 (D.R.I. Apr. 3, 2017).

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 16) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero,

524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 2, 2021